IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH M. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-2360-MSN-atc |
| | ) | |
| MEMPHIS POLICE DEPARTMENT, | ) | |
| SGT. HALLIBURTON, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On June 14, 2023, Plaintiff Joseph M. Miller filed a *pro se* Complaint against Defendants Memphis Police Department (the "MPD") and Sergeant Halliburton. (ECF No. 1.) Also on September 26, 2023, Miller filed a motion to proceed *in forma pauperis* (ECF No. 2), which was subsequently granted (ECF No. 6). This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the reasons set forth below, it is recommended that Miller's claims be dismissed *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## **PROPOSED FINDINGS OF FACT**

Miller alleges violations of his Fourth Amendment rights under 42 U.S.C. § 1983. (ECF Nos. 1, 1-1.) His claims arise from allegations of stalking made against him by Meranda[1] Snipes and her daughter Erica Snipes. (ECF No. 1-1, at 6.) According to an Affidavit of Complaint attached to Miller's Complaint,[2] the Snipeses reported to the MPD that Miller repeatedly sent harassing text messages to Meranda, "calling Meranda and Erica names, using obscene language, and threatening to call police on them." (*Id.*) The Snipeses also claimed that Miller repeatedly drove past their home and would sometimes stop to call them names or make threats. (*Id.*) Meranda also reported that, on May 29, 2023, Miller approached her and Erica at a gas station and spat in their faces. (*Id.*) Meranda was shown a six-person photographic lineup and identified Miller as the person who committed these acts against her and her daughter. (*Id.*) Based on that information, Sergeant Halliburton executed the Affidavit of Complaint against Miller for two counts of stalking under Tenn. Code Ann. § 39-17-315, and a warrant was issued for his arrest. (*Id.*)

Miller alleges that he was arrested when he turned himself in at the Internal Affairs Office on Union Extended in Memphis, Tennessee. (ECF No. 1, at 5.) His bail was initially set at $25,000 but was lowered to $1,000 because he was "not a repeat offender of the stalking." (*Id.* at 4.) Miller further alleges that Sergeant Halliburton did not run any background checks

---

[1] As discussed further below, Snipes is referred to in Miller's pleadings as Miranda and in attachments to his pleadings as Meranda.

[2] The Court takes judicial notice of this attachment to the Complaint. *See Harper v. Shelby Cnty. Gov't*, No. 2:15-cv-2502-STA-cgc, 2016 WL 737947, at *4 (W.D. Tenn. Feb. 23, 2016) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) ("When a Court considers whether dismissal for failure to state a claim is appropriate, the Court may consider the complaint and attached exhibits, as well as any public records, so long as they are referred to in the complaint and are central to the claims contained therein.").

and that the arrest warrant was faulty because Miller did not commit any of the charges brought against him. (*Id.*)

Miller asserts claims against the MPD and Sergeant Halliburton for (1) false arrest under 42 U.S.C. § 1983; (2) refusal to conduct a background check before executing an arrest warrant; (3) refusal of services; (4) violation of the Lanham Act's false advertising provision, 15 U.S.C. § 1125; (5) false imprisonment; (6) illegal search and seizure under the Fourth Amendment; (7) excessive force; and (8) filing a false arrest report in violation of Tenn. Code Ann. § 39-16-502. (*Id.* at 3; ECF No. 1-1, at 2.) He seeks damages of $20,000,000. (ECF No. 1, at 5.)

## PROPOSED CONCLUSIONS OF LAW

### I.   28 U.S.C. § 1915(e)(2) Screening

Under Local Rule 4.1(b)(2), the Clerk of the Court will only issue summonses in cases with non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* at the Court's direction after the Court conducts a screening under § 1915(e)(2)(B). Under that provision, the Court shall dismiss the case at any time if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." This Report and Recommendation constitutes the Court's screening.

### II.   Standard of Review for Failure to State a Claim

To determine whether Miller's Complaint states a claim for which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

3

. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDF, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf

or *pro se* litigants. Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F. 2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must sill 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs., L.P.*, No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018 (quoting *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011)).

### III.   Miller's False Advertising Claims Under § 1125 of the Lanham Act

Miller has failed to state a Lanham Act claim. "The Lanham Act prohibits a 'person' from using a 'false or misleading description' or 'representation of fact' in 'commercial advertising promotion' that 'misrepresents the nature, characteristics, qualities, or geographic origin' of the person's or another's 'goods, services, or commercial activities.'" *Lewis v. Acuity Real Estate Servs, LLC*, 63 F.4th 1114, 1117 (6th Cir. 2023) (quoting § 1125(a)(1)(B)). "The Act expressly authorizes 'a civil action by any person who believes that he or she is likely to be damaged by' the false advertising." *Id.* (quoting § 1125(a)(1)). The Act also expressly authorizes a civil action against states, municipalities, and other governmental actors "in the same manner and to the same extent as any nongovernmental entity." § 1125(a)(2).

"On its face, this text could be read to place no limits on the injured parties who may sue over false advertising." *Lewis*, 63 F.4th at 1117 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). However, the Lanham Act's false advertising

5

protections apply only to those within the Act's "zone-of-interest"; that is, it provides a right of action only to "persons engaged in interstate commerce." *Id.* (quoting *Lexmark*, 572 U.S. at 131). In other words, the Lanham Act's false advertising protections apply "only [to] businesses that complain about an 'injury to a commercial interest in reputation or sales,'" and therefore "consumers do not fall within this zone of interest even if they waste money on a useless product because the traditional unfair-competition tort did not encompass this consumer harm." *Id.* (quoting *Lexmark*, 572 U.S. at 131–32).

Even if Miller had adequately pled all other required elements of a Lanham Act false advertising claim, he has alleged, at most, injuries as a consumer of the services of the MPD. These "consumer injuries . . . fall outside the Lanham Act's zone of interests. That fact independently dooms his lawsuit." *Id.* at 1121. As a result, the Court recommends dismissal of Miller's false advertising claims under the Lanham Act for failure to state a claim.

**IV.     Miller's Claims Under Criminal Statutes**

Miller alleges violations of 18 U.S.C. § 242 against Halliburton and requests that Halliburton be arrested and charged under Tenn. Code Ann. § 39-16-502 and Cal. Penal Code 118.1 for filing a false police report. (ECF No. 1-1, at 2.) Each of these code sections is a criminal statute that does not create a private right of action. *See Grose v. City of Bartlett, Tenn. Gov't*, No. 2:20-CV-02307-TLP-cgc, 2023 WL 6294189, at *7 (W.D. Tenn. Sept. 27, 2023) (citing, e.g., *Bogard v. Allegan Cnty., Mich.*, No. 17-2329, 2018 WL 5819476, at *3 (6th Cir. Sept. 6, 2018)) (finding that 18 U.S.C. § 242 does not create a private right of action); *King v. Shoate*, No. 20-cv-1145-SHM-cgc, 2023 WL 4188051, at *4 (W.D. Tenn. June 26, 2023), *appeal dismissed*, No. 23-5679, 2023 WL 9423428 (6th Cir. Aug. 31, 2023) (finding that Tenn. Code Ann. § 39-16-205 does not create a private right of action); *Rouse v. Pitkin*, No. 21-CV-05493-

AGT, 2022 WL 834956, at *4 (N.D. Cal. Mar. 21, 2022) (citing, e.g., *Eusse v. Vitela*, No. 13cv0916 BEN (NLS), 2013 WL 3778636, at *3 (S.D. Cal. July 17, 2013)) (finding that Cal. Penal Code § 118.1 does not create a private right of action). It is therefore recommended that Miller's claims under these statutes be dismissed with prejudice.

V.   **Miller's § 1983 Claims**

To state an actionable claim under 42 U.S.C. § 1983, "a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States and (2) that the deprivation was committed by a defendant acting under color of state law." *Walker v. Ford*, No. 1:17-cv-01147-JDB-cgc, 2019 WL 1030540, at *2 (W.D. Tenn. Mar. 4, 2019) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 (1985)).

A.   <u>Miller has failed to plead a claim for false arrest and false imprisonment.</u>

The gravamen of Miller's Complaint appears to be that Halliburton filed a false police report against him (the Affidavit of Complaint), based on false or misleading statements, which led to his false arrest and imprisonment. (ECF No. 1-1, at 2.) Where, as here, "a false-imprisonment claim arises out of an alleged false arrest[,] those claims are identical, so [the Court] will simply refer to those two claims together as a false-arrest claim." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Corvin v. Bice*, No. 1:05-CV-219, 2007 WL 776501, at *4 (E.D. Tenn. Mar. 9, 2007)).[3] Claims for false arrest arise under the Fourth Amendment. U.S.

---

[3] To the extent Miller asserts an independent claim of false imprisonment, he must show "that he was restrained or detained against his will by a defendant and that the defendant had no probable

7

Const. amend IV; *Weser*, 965 F.3d at 513 (citing *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020)).

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Id.* (quoting *Voyticky v. Village of Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005)). Probable cause exists when "the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire*, 205 F.3d at 315 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). False arrest under § 1983 can be based on "a showing that the police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that were necessary to the finding of probable cause for the warrant." *Reynolds v. Upham*, No. 3:15-CV-36-TAV-CCS, 2015 WL 3994913, at *2 (E.D. Tenn. July 1, 2015) (citing *Sykes v. Anderson*, 625 F.3d 294, 305–08 (6th Cir. 2010)).

Miller was arrested and charged with stalking under Tenn. Code Ann. § 39-17-315. In Tennessee, stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Tenn. Code Ann. § 39-17-315(a)(4). A course of conduct is defined as

> a pattern of conduct composed of a series of two (2) or more separate, noncontinuous acts evidencing a continuity of purpose, including, but not limited to, acts in which the defendant directly, indirectly, or through third parties, by any

---

cause to do so." *Holzemer v. City of Memphis*, No. 06-cv-2436, 2008 WL 8954888, at *24 (W.D. Tenn. Dec. 31, 2008), *aff'd*, 621 F.3d 512, 25 (6th Cir. 2010). Miller does not allege that he was detained against his will—instead, he alleges that he turned himself in (ECF No. 1, at 5)—and thus he cannot maintain a claim for false imprisonment. *Holzemer*, 2008 WL 8954888, at *24.

8

>action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to a person, or interferes with a person's property.

*Id.* § 315(a)(1)(A).  Harassment is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress." *Id.* § 315(a)(3).

Miller fails to demonstrate that Halliburton lacked probable cause to believe Miller committed the crime of stalking.  The allegations made by the Snipeses, as reflected in the Affidavit of Complaint, are that Miller repeatedly harassed them and caused them to feel frightened by, for example, threatening them and spitting in their faces.  Those allegations, along with Meranda Snipes's identification of Miller, are sufficient to provide probable cause that Miller committed the crime of stalking.  *See Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) ("In assessing probable cause, this Court has held that an eye witness identification and accusation, by itself, is sufficient to establish probable cause.").

Miller appears to attack the existence of probable cause by alleging that Halliburton should not have believed the Snipeses.  For example, Miller alleges that Meranda Snipes gave officers "a fake spelling" of her name so they would not see that she had an active warrant and an order of protection.  (ECF No. 1-1, at 1.)  A review of the order of protection attached to Miller's Complaint, however, reveals that Meranda Snipes's name is spelled the same as it is spelled in the Affidavit of Complaint.[4]  (*Id.* at 5.)  That spelling thus would not have concealed the existence of the order of protection or misled Halliburton in issuing the Affidavit of Complaint.

---

[4] Miller refers to Snipes in his Complaint as "Miranda" (ECF No. 1, at 4; ECF No. 1-1, at 1), but the order of protection, the Affidavit of Complaint, and the order granting bail he attaches all use the spelling "Meranda" (ECF No. 1-1, at 5–7).

9

Miller also avers that Halliburton failed to conduct a background check on the complaining parties, which may also have led Halliburton to discover the warrant and order of protection. (*Id.*) However, once probable cause was established, Halliburton had "no duty to investigate further or to look for additional evidence which may exculpate" Miller. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (citing, e.g., *Rainer v. Lis*, 16 F.3d 1221, at *3 (6th Cir. 1994) (unpublished table opinion)) (rejecting the plaintiff's attempt to hold the officers "liable for evidence which they failed to collect and, therefore, of which they were unaware"). Miller has alleged no facts indicating that Halliburton was on notice that additional investigation was required or had reason to disbelieve the Snipeses, such that he could be said to have executed the affidavit with reckless disregard for the truth. The probable cause requirement "does not mean 'that every fact recited in the warrant is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.'" *Bettendorf v. Lytle*, No. 2:17-cv-681, 2018 WL 4385089, at *4 (S.D. Ohio Sept. 14, 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978)) (dismissing a § 1983 claim where "the Complaint does not sufficiently plead that any of the individual officers *knew* the factual allegations used to obtain the warrants were false or that the statements were made with reckless disregard for the truth"); *see also Griffin v. City of Detroit*, 996 F.2d 1215, at *4–5 (6th Cir. 1993) (unpublished table opinion) (citing *Morgan v. Church's Fried Chicken*, 329 F.2d 10, 12 (6th Cir. 1987); *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1449 (10th Cir. 1985)) (finding that the affiant reasonably relied on the statement of "an ordinary witness rather than an informant," who "is entitled to credence," and that "[t]he district court was not required to accept [the plaintiff's] unwarranted conclusions and inferences that [the affiant] deliberately falsified

10

his affidavit"). Based on the information given to him by the Snipeses, Halliburton had sufficient probable cause to arrest Miller, notwithstanding Miller's conclusory allegations to the contrary. As such, it is recommended that Miller's claim for false arrest be dismissed with prejudice.

      B.      <u>Miller's remaining § 1983 claims fail to state a claim for which relief can be granted.</u>

Miller further claims that he was deprived of his right to freedom from improper search and seizure, that he was refused services by the MPD, and that he was subjected to excessive force. (ECF No. 1, at 3.) But his Complaint is wholly devoid of facts in support of these claims. Though he generally alleges that he suffered an improper search or seizure and excessive force, he provides no facts regarding any search, seizure (other than his arrest after turning himself in, addressed above), or force used against him. Similarly, though he indicates that he made a 911 call and was "refus[ed] services" (ECF No. 1, at 4), he does not state any facts indicating what occurred, or did not occur, during and after the 911 call or even what the basis of his 911 call was. When construing the Complaint in a light most favorable to Miller and accepting his allegations as true, he has provided no facts to support his § 1983 claims, and thus dismissal is recommended.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Miller's Complaint be dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim for which relief may be granted.

Respectfully submitted this 23rd day of May, 2024.

                                          s/Annie T. Christoff
                                          ANNIE T. CHRISTOFF
                                          UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver/forfeiture of objections, exceptions, and further appeal.